**MEADOR–BRADY MANAGEMENT CORPORATION d/b/a Pasadena Honda and David R. Hubbard d/b/a Galveston Honda, Petitioners,**

v.

**The TEXAS MOTOR VEHICLE COMMISSION and Gulf Coast Sports, Inc. d/b/a International House of Wheels, Respondents.**

No. D–2885.

Supreme Court of Texas.

Nov. 24, 1993.

William David Coffey, III, Austin, for petitioners.

Joe R. Greenhill, Jr., Douglas Fraser, Dan Morales, Austin, for respondents.

## OPINION

HECHT, Justice.

The Texas Motor Vehicle Commission has six members, a majority of whom constitute a quorum. *Texas Motor Vehicle Commission Code*, TEX.REV.CIV.STAT.ANN. art. 4413(36), §§ 2.02, 2.08(a) (Vernon Supp.1993). The Commission is authorized to take final action upon a "majority vote of a quorum of the Commissioners". *Id.* § 3.08(g). The principal issue in this case is whether the Commission can reach a final decision on a vote of 2–1, with one commissioner abstaining. The court of appeals answered this question in the affirmative. 833 S.W.2d 683. We disagree.

Gulf Coast Sports, Inc. applied to the Commission for a license to sell new Honda motorcycles in League City. Two Honda dealers in the vicinity, Meador–Brady Management Corp. doing business as Pasadena Honda, and David R. Hubbard doing business as Galveston Honda, protested Gulf Coast's application and were admitted as parties to the proceeding. After taking evidence, the hearing examiner recommended to the Commission that the application be approved. The Commission rejected the hearing examiner's recommendation at a meeting attended by all parties and five of the six members of the Commission. The vote to deny Gulf Coast's application was 3–2, with the chairman voting to break what would otherwise have been a tie.

The Commission directed that an order reflecting its action be prepared. Fifteen days after the Commission meeting, the executive director of the Commission notified Gulf Coast's counsel by telephone that a final order had been signed, and four days later a copy of the order was mailed to Gulf Coast's counsel. The order bore the date of the Commission hearing. The day after it was mailed, or twenty days after the date of the hearing and order, Gulf Coast filed a motion for rehearing.

The challengers, Meador–Brady and Hubbard, opposed the motion for rehearing and, for reasons we discuss below, moved to dismiss it as being untimely filed. The Commission granted the motion for rehearing by a vote of 4–1, with one commissioner—the one previously absent—failing to vote, and the sole vote against rehearing cast by a commissioner who has originally voted to grant the license. The application was scheduled to be reconsidered at a later meeting of the Commission.

That meeting was attended by the chairman and three other commissioners. The commissioner who had not voted in this proceeding resigned from office the day before the meeting. One of the commissioners who had voted to deny Gulf Coast's application was absent. The three other commissioners voted the same way they had the first time, so that the vote was 2–1 to grant the application. This time the chairman did not vote. The Commission tells us in its brief that it is customary for the chairman to abstain except to break a tie or to create a tie in order to defeat an action. Based upon the vote at this

meeting, the Commission issued an order granting Gulf Coast's application.

The three votes taken are summarized in the following table:

|  | LICENSE 1st Meeting | REHEARING | LICENSE 2d Meeting |
|---|---|---|---|
| FOR | Collins<br>Horton | Chr. Burton<br>Collins<br>Cook<br>Jones | Collins<br>Horton |
| AGAINST | Chr. Burton<br>Cook<br>Jones | Horton | Jones |
| NOT VOTING |  |  | Chr. Burton |
| NOT PRESENT | Eversole | Eversole | Cook<br>(office vacant) |

On appeal, Meador–Brady and Hubbard argue (1) that Gulf Coast's motion for rehearing was untimely and the Commission's first order was therefore final, (2) that the second vote taken by the Commission did not authorize final action, and (3) that the decision to grant the application was not supported by substantial evidence. The court of appeals rejected each of these arguments.

■ We agree with the Commission and the court of appeals that Gulf Coast's motion for rehearing was timely filed, and therefore, the Commission had jurisdiction to grant a rehearing and issue a second order. Proceedings before the Commission are governed by the Texas Motor Vehicle Commission Code, Tex.Rev.Civ.Stat.Ann. art. 4413(36) (Vernon Supp.1993) ("TMVCC"), and by the Administrative Procedure Act, Tex.Gov't Code §§ 2001.001–.902 ("APA") (formerly the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Vernon Supp.1993) ("AP-TRA"))[1], except to the extent that the latter conflicts with the former. TMVCC § 3.09. At the time of the proceedings before the Commission in this case, section 3.08(h) of the TMVCC provided: "Within 15 days after

the date of rendition of any final order or decision, any party may file a motion for rehearing."[2] Section 3.08(g), in part, provides that the Commission shall issue a "written final decision or order" which shall be signed on behalf of the Commission by the executive director. We conclude, and the parties agree, that a final order or decision of the Commission is rendered when it is signed. Since Gulf Coast's motion for rehearing was not filed until twenty days after the date of the Commission's first order, Meador–Brady and Hubbard argue that the Commission had no jurisdiction to grant the motion or issue the second order. Thus, they conclude, the first order, which Gulf Coast did not appeal, should be final.

■ Although Gulf Coast's motion was not filed before the statutory deadline, it was filed within five days of the date the Commission first notified Gulf Coast of the order and the day after the Commission mailed Gulf Coast a copy. The TMVCC does not require the Commission to give parties notice of final orders and decisions, but the APTRA did, in section 16(b), which stated in part: "Parties

---

1. Article 6252–13a, which governed the proceedings before the Commission in this case, has been recodified in the Government Code. The provisions of the former statute with which we are concerned here are essentially identical to the recodified provisions.

2. Act eff. June 16, 1989, 71st Leg., R.S., ch. 1130, § 16, 1989 Tex.Gen. Laws 4653, 4661.

Section 3.08(h) was amended effective June 16, 1991, to its present form: "A party who seeks a rehearing of an order shall do so in accordance with the terms of the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes)." Act eff. June 16, 1991, 72nd Leg., R.S., ch. 501, § 13, 1991 Tex. Gen. Laws 1749, 1754.

shall be notified either personally or by first class mail of any decision or order."[3] In *Commercial Life Ins. Co. v. State Bd. of Ins.*, 774 S.W.2d 650, 651–52 (Tex.1989), we held that when an agency is required to give notice of its decisions and fails to do so, a party's fifteen-day period for filing a motion for rehearing does not begin to run until that party receives actual notice of the order. The statutory provision we construed, section 16(e) of the APTRA, was at that time essentially the same as the version of section 3.08(h) of the TMVCC applicable in this case.[4] Consistent with our decision in *Commercial Life*, we hold that Gulf Coast's motion for rehearing was timely filed.

Meador–Brady and Hubbard next contend that the Commission's second order was not approved by a "majority vote of a quorum of the Commissioners", as required by section 3.08(g) of the TMVCC. Gulf Coast has two arguments in response. First, Gulf Coast argues that the statute is satisfied when action is approved by a majority of commissioners voting when a quorum is present. Thus, when a quorum of four is present and the vote is 2–1, as in this case, the Commission may take action. Second, Gulf Coast argues

that an abstention should be deemed an acquiescence in the majority vote, so that in this case the vote was in effect 3–1 to grant the application. We reject both these arguments.

■ Gulf Coast's first argument is simply not a reasonable construction of the statute. We think that a "majority vote of a quorum" means a majority of the quorum itself, not a majority of those voting when a quorum is present.

■ Gulf Coast's second argument regarding the treatment of the chairman's abstention is more difficult. The argument is based upon an ancient common law rule, traced to *Rex v. Foxcraft*, also known as *Oldknow v. Wainwright*, 97 Eng.Rep. 683 (1760), which deems a member of a body who abstains from a vote to acquiesce in the action favored by a majority of the members voting. *See* J.R. Kemper, Annotation, *Abstention from Voting of Member of Municipal Council Present at Session as Affecting Requisite Voting Majority*, 63 A.L.R.3d 1072, 1078 n. 6 (1975). The rule has been distinguished, rejected, or ignored about as often as it has been followed,[5] and we have never

---

**3.** This provision has been moved to section 2001.142(a) of the APA, which states: "A party in a contested case shall be notified either personally or by first class mail of any decision or order."

**4.** Prior to September 1, 1989, section 16(e) of the APTRA provided in part: "A motion for rehearing must be filed within 15 days after the date of rendition of a final decision or order." Act eff. Sept. 1, 1989, 71st Leg., R.S., ch. 362, 1989 Tex.Gen. Laws 1448. After that date section 16(e) provided in part: "A motion for rehearing must be filed by a party within 20 days after the date the party or his attorney of record is notified of the final decision or order as required by [section 16(b)]." *Id.* Section 2001.146(a) now provides: "A motion for rehearing in a contested case must be filed by a party not later than the 20th day after the date on which the party or the party's attorney of record is notified as required by Section 2001.142 of a decision or order that may become final under Section 2001.144."

**5.** *See, e.g., Prosser v. Village of Fox Lake*, 91 Ill.2d 389, 63 Ill.Dec. 396, 398, 438 N.E.2d 134, 136 (1982) (when a statute required " 'the concurrence' of a majority of either the quorum or of all members then holding office", and, of a six-member board, three voted in favor, one voted against, one was absent, and the acting president did not vote, the enactment was upheld on the

theory that the acting president acquiesced with the majority). *See also Rushville Gas Co. v. City of Rushville*, 121 Ind. 206, 23 N.E. 72 (1889) (three of six refused to vote on resolution; the court reasoned that if the members present desired to defeat a measure, they had to vote against it, their inaction would not serve such purpose and their silence was acquiescence rather than opposition); *Payne v. Petrie*, 419 S.W.2d 761 (Ky.Ct.App.1967) (statute required that ordinance be "voted for by a majority of the members of [the] board"; of a twelve-member board, six voted for, five voted against, and one passed; court applied the rule of acquiescence to validate the ordinance); *Northwestern Bell Tel. Co. v. Board of Comm'rs*, 211 N.W.2d 399, 404 (N.D. 1973) (statute provided that "a majority of all of the members of the governing body must concur in the passage"; of a five-member body, two voted in favor, one voted against, and two abstained because of a financial interest; court upheld enactment); *Babyak v. Alten*, 106 Ohio App. 191, 154 N.E.2d 14, 16–19 (1958) (statute required "concurrence of a majority of all members elected to the legislative authority"; of a six-member council, three voted in favor, two against, and one abstained; court upheld enactment) (dictum). In contrast, *see Davis v. Willoughby*, 173 Ohio St. 338, 182 N.E.2d 552 (1962) (statute requiring "concurrence" of three-

applied it in Texas. *Cf. State v. Etheridge,* 32 S.W.2d 828 (Tex.Comm'n App.1930, judgm't adopted).[6] We need not determine whether to apply it in this case, however, because we believe the Legislature has foreclosed that decision by requiring a "majority vote of a quorum". An abstention, even if deemed to acquiesce in the action favored by the majority, is not a *vote.* The Commission tells us that by custom the chairman may vote in order to create a tie and thus defeat action, suggesting that his failure to do so in this case indicates acquiescence in the granting of Gulf Coast's application. However, the chairman voted against the application at the first meeting. It is possible, of course, that the chairman changed his mind between the two meetings, although none of the other commissioners did, but we are unwilling to presume that he did when the Legislature has required a vote. *See Etheridge,* 32 S.W.2d at 831. We hold, therefore, that the vote of the commissioners at the second meeting did not authorize the action taken by the Commission.

Since we conclude that the order from which appeal has been taken is invalid, we need not consider whether there was substantial evidence to support it. Accordingly, the judgment of the court of appeals is reversed, and the case is remanded to the Commission for further proceedings.

---

fourths of legislative body meant affirmative vote, not mere acquiescence or silent submission); *State v. Gruber,* 231 Or. 494, 373 P.2d 657, 660 (1962) (statute required "appointment [by] a majority of the entire membership of the council"; of six qualified councilmen, three voted in favor, one abstained, and two were absent; court held that the measure failed to get the requisite four votes, calling the rule of acquiescence an "unwarranted extension" of *Rex v. Foxcraft* ). Courts have also construed statutes requiring an "affirmative vote" of a majority as foreclosing application of the rule of acquiescence. *See, e.g., Prosser,* 63 Ill.Dec. at 398, 438 N.E.2d at 136 (theory of acquiescence does not apply when statute requires affirmative vote of majority of either quorum or of all members holding office); *see also, e.g., Streep v. Sample,* 84 So.2d 586, 587 (Fla.1956) (statute required "affirmative vote of three-fourths of the governing body"); *City of Haven v. Gregg,* 244 Kan. 117, 766 P.2d 143, 147 (1988) (statute required that "majority of all the members-elect of the council of council cities … vote in favor thereof"); *Ezell v. City of Pascagoula,* 240 So.2d 700, 703 (Miss.1970) (statute provided that an "affirmative vote of a majority of all of the members of the council shall be necessary"); *Braddy v. Zych,* 702 S.W.2d 491, 495 (Mo.Ct.App.1986) (statute stated that "no bill shall become an ordinance unless a majority of all the members vote in favor of its adoption").

6. *Etheridge* concluded that statutory language requiring a "two-thirds vote of the city council" to adopt provisions of title 28 did not mean a two-thirds vote of the council members present and voting, (assuming a quorum is present). Strictly construing this language, especially in light of other statutory provisions, the Commission reasoned that it required an affirmative showing that two-thirds of aldermen constituting the council favored the proposition. Thus, when the council consisted of five aldermen and a mayor, an ordinance was not properly adopted when three aldermen voted for it, one against, and the remaining member did not vote. *Etheridge,* 32 S.W.2d at 831. Contrast *State v. City of McAllen,* 127 Tex. 63, 91 S.W.2d 688 (1936), in which the city charter required that an ordinance be passed by a majority vote of commissioners present and signed by the mayor.