TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00097-CV






Young Chevrolet, Inc., Appellant




v.




The Texas Motor Vehicle Board; Jupiter Chevrolet-Geo, Inc., d/b/a Newman Chevrolet; and
General Motors Corp., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-15328, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 Appellant Young Chevrolet, Inc. ("Young") appeals the district court's judgment affirming
a final order issued by the Texas Motor Vehicle Board ("Board"). Jupiter Chevrolet-Geo, Inc. ("Jupiter")
applied to relocate its car dealership, and despite Young's protest, the Board granted the application. (1) The
district court affirmed the Board's action. In this appeal, Young (1) challenges the Board's jurisdiction to
render the final order, (2) contends the trial court should not have dismissed its independent due process
claim, (3) complains of alleged procedural irregularities, and (4) objects to the trial court's exclusion of
evidence. We will affirm.


STATEMENT OF FACTS In May 1993, Jupiter applied to the Board to relocate the dealership approximately one
mile. See Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 1998). (2) Young, a nearby Chevrolet
dealership owned and operated by Keith Young, contested Jupiter's application. Id. General Motors
Corporation ("GM") intervened in support of Jupiter's application to relocate. After a hearing was held,
the examiner issued a proposal for decision recommending that the Board grant Jupiter's application to
relocate. At the Board's meeting on August 11, 1994, the Board heard arguments from both sides, voted
to reject the examiner's recommendation, and orally denied Jupiter's request to relocate. Thereafter, the
decision and order were reduced to writing, and, on behalf of the Board, Chairman T.J. Connolly signed
the written order memorializing the Board's decision on August 15, 1994. The final order was then mailed
and faxed to the parties on August 16, 1994.

 Jupiter and GM filed extensive motions for rehearing. The written order had adopted all
of Young's proposed findings of fact and conclusions of law, and GM especially was concerned about the
conclusion of law that GM was unreasonably discriminating among Jupiter, Young, and other Chevrolet
dealers through its Motors Holding Division's ownership interest in Jupiter. (3) As an exhibit to its motion for
rehearing, GM attached a letter from San Antonio dealer Ernesto Ancira, recounting the importance of the
MHD program to him and his participation in the program. Other dealership owners supportive of the
MHD sent similar letters to the executive director of the Board, Brett Bray, who forwarded the letters to
the members of the Board and sent copies to all the parties' counsel. During the interim between the
Board's August decision denying Jupiter's relocation and its consideration of the motions for rehearing, nine
dealers who were not parties to the contested case, including Ancira, submitted letters to the Board.

 The Board reconvened on September 29, 1994, to consider the motions for rehearing filed
by Jupiter and GM. Without hearing argument, the Board voted to grant the motions for rehearing and
vacated its prior order. Accordingly, the Board adopted the examiner's proposed findings of fact and
conclusions of law and granted Jupiter's application for relocation. Young then filed a motion for rehearing,
which the Board denied.

 Seeking judicial review, Young filed suit in district court. Young brought suit under the
Administrative Procedure Act ("APA") (4) and further sought a declaratory judgment pursuant to the Uniform
Declaratory Judgments Act (5) that its rights were violated because the Board failed to follow the APA. 
Appellees filed a plea to the jurisdiction on Young's declaratory judgment action which the trial court
granted. A bench trial was then held to determine Young's allegations under the APA that ex parte
communications had tainted the Board's September 29 decision. Specifically, Young contended that the
members of the Board erroneously considered the nine dealer letters and that Connolly had participated
in an illegal conversation with a non-party, Ancira. The district court concluded that neither the dealer
letters nor the Connolly-Ancira conversation were in violation of the APA or, if they were, they had not
harmed Young or prejudiced its substantial rights. Consequently, the district court affirmed the Board's
final order approving Jupiter's application to relocate.

 Young now brings this appeal, complaining for the first time on appeal that the Board did
not have jurisdiction to render the September 29 order in which it reversed itself or, alternatively, the
Board's first order became final and unappealable because it was not reheard in a timely fashion. Further,
Young contends that the trial court should not have dismissed its independent due process claims, the ex
parte communications violate the APA, and the trial court abused its discretion in excluding the deposition
testimony of two GM officials.


DISCUSSION

 Young's second and third points of error challenge the Board's jurisdiction to render the
second order in which it reversed itself and approved Jupiter's application for relocation. Appellees
respond that the Board did have jurisdiction to render the second order and that Young waived these points
of error by failing to include them in its motion for rehearing before the Board or in its pleadings to the
district court. In its reply brief, Young does not deny that these issues were not presented to the Board and
district court; rather, it argues they pertain to subject matter jurisdiction and cannot be waived. We agree
with Young and will address the points of error. See Texas Ass'n of Business v. Texas Air Control Bd.,
852 S.W.2d 440, 443 (Tex. 1993) (subject-matter jurisdiction is essential to court's authority to decide
case); Grounds v. Tolar Indep. Sch. Dist., 707 S.W.2d 889, 893 (Tex. 1986) (lack of jurisdiction is
fundamental error and may be raised for first time on appeal); S.C. San Antonio, Inc. v. Texas Dep't of
Human Servs., 891 S.W.2d 773, 776 (Tex. App.--Austin 1995, writ denied) (jurisdictional challenge
may be raised for first time on appeal).

 Young asserts in its second point of error that the motions for rehearing filed by Jupiter and
GM were overruled by operation of law before the Board's change in position; therefore, Young contends
the Board's first order denying the application is its final decision. Young arrives at this conclusion by
arguing that the Board's oral pronouncement on August 11, for which the attorneys for both parties were
present, triggered the motion for rehearing timetables. Young relies on the APA provisions which provide
that a decision which may become final must be in writing or stated in the record and that a party in a
contested case shall be notified either personally or by mail of the decision. See Tex. Gov't Code Ann.
§§ 2001.141(a), .142(a) (West 1998). Young takes the position that the Board had forty-five days from
August 11 to act on the motions for rehearing or the motions would be overruled by operation of law and
the August 11 decision would become final and unappealable. See id. § 2001.144 (West 1998). By
Young's calculations, the Board's action had to occur by September 26. (6) Since the Board did not act on
the motions until September 29, three days after Young argues they were overruled by operation of law,
the Board had no jurisdiction to promulgate the September 29 order because the August 11 oral decision
already had become final. We disagree with Young's position that the presence of the parties at the
Board's oral pronouncement of the decision triggered the timeline and rendered the motions for rehearing
untimely. Instead, we hold that, under these facts, the time period for ruling on a motion for rehearing
before the Board commences when the signed, written order is mailed to the parties.

 The Board had forty-five days from the date on which Jupiter was notified of the final order
to act on the motions for rehearing or else the motions would be overruled by operation of law. See id.
§ 2001.146(c) (West 1998). Under the APA, an order that could become final can be stated in the record
or written. See id. § 2001.141(a). However, the APA only establishes the "minimum standards of
uniform practice and procedure for state agencies." See id. § 2001.001(1) (West 1998) (emphasis
added); Mednick v. Texas State Bd. of Pub. Accountancy, 933 S.W.2d 336, 338 (Tex. App.--Austin
1996, writ denied). Here, section 3.08(g) of the Code governing the Board requires the Board to render
a final written order. See Tex. Rev. Civ. Stat. Ann. art. 4413(36). The supreme court has held that a final
order of the Board is not rendered until it is signed. See Meador-Brady Management Corp. v. Texas
Motor Vehicle Comm'n, 866 S.W.2d 593, 595 (Tex. 1995). (7) Thus, we conclude that the signed, written
order of the Board, and not the oral pronouncement of the decision, sets in motion the rehearing stage of
the proceeding. The APA allows for notifying parties of an order either personally or by mail. See Tex.
Gov't Code Ann. § 2001.142(a). A party receiving notification by mail is deemed to have notice of the
decision on the day the written order is mailed to the party. See Tex. Gov't Code Ann. § 2001.142(c)
(West 1998). Consequently, we further conclude that, when the parties are notified by mail, the time
period for ruling on a motion for rehearing commences when the signed, written order of the Board is
mailed to the parties. (8)

 Under our holding, the Board had forty-five days from the date the written order was
mailed to the parties, August 16, to rule on the motions for rehearing. The Board's action on September
29 was within this forty-five day period. Accordingly, the Board had jurisdiction to grant the motions for
rehearing and to issue the September 29 order approving Jupiter's application for relocation. Young's
second point of error is overruled.

 Young argues, alternatively, in its third point of error that the Board's August 15 written
order became final because it was not overruled in a timely fashion. The extent of Young's argument turns
on the position that the motions for rehearing filed by Jupiter and GM only challenged the Board's August
11 oral decision and not the August 15 written order and, further, that the Board's September 29 order
only refers to the earlier date as well. However, only one Board decision could become final; it was orally
announced on August 11, and, as required by the Code, memorialized in the written order which was
signed by Connolly on behalf of the Board on August 15. Reference in the motions for rehearing to the
August 11 decision does not render the request for rehearing infirm because it was on August 11 that the
Board voiced its decision to deny Jupiter's application. The record reflects no uncertainty as to the action
of the Board being challenged, and we reject this hyper-technical contention. Young's third point of error
is overruled.

 In its first point of error, Young complains that the GM-orchestrated submissions of
testimonial evidence outside the record, alone or in combination with Connolly's ex parte communication
with Ancira about the contested case, deprived Young of its constitutional procedural due process rights,
independent of APA strictures, as well as of its rights under the APA. Young raises three arguments under
this claim. First, Young argues it has a right to bring a due process claim apart from the APA, and the trial
court erred in dismissing the claim. Next, Young asserts the Board's receipt of the dealer letters constitutes
unlawful procedure in violation of APA section 2001.174. Finally, Young maintains that the letters and
Connolly-Ancira conversation constitute impermissible ex parte communications about the merits of the
case under section 2001.061. We will reject all of Young's contentions and overrule the point of error.


I. Due Process

 Young included a request for a declaratory judgment action in its pleadings to the trial court,
complaining that the Board's conduct in not following the APA's requirements violated its constitutional
rights to due process under both the Texas and United States Constitutions. This due process claim was
made independent of, and in addition to, Young's administrative appeal. Appellees filed a plea to the
jurisdiction and took the position that Young could not pursue a separate due process claim on the very
grounds that formed the basis of the administrative appeal. The trial court granted the plea to the
jurisdiction and dismissed Young's inherent due process claim for want of jurisdiction. On appeal, Young
argues it is entitled to pursue its separate due process claim. We disagree under these circumstances.

 When a statute provides a method for attacking an agency order, a declaratory judgment
action directed at that order will not lie. See Ben Robinson Co. v. Texas Workers' Compensation
Comm'n, 934 S.W.2d 149, 153 (Tex. App.--Austin 1996, writ denied); Texas Employment Comm'n
v. Child, Inc., 738 S.W.2d 56, 58 (Tex. App.--Austin 1987, writ denied), cert. denied, 488 U.S. 849
(1988); Railroad Comm'n v. Home Transp. Co., 670 S.W.2d 319, 326 (Tex. App.--Austin 1984, no
writ). This follows because a party is generally not entitled to redundant remedies. See Robinson, 934
S.W.2d at 153; Child, 738 S.W.2d at 58. In Robinson, we concluded that a declaratory judgment
directed at the constitutional validity of a program, and not attacking the order itself, was permissible. See
Robinson, 934 S.W.2d at 153. This, however, is not the case before us. Both Young's declaratory
judgment action and APA appeal are directed at the validity of the Board's September 29 order in light
of the alleged impermissible ex parte contacts. If Young prevailed in both actions, the relief would be the
same. Consequently, the trial court did not err in dismissing Young's declaratory judgment action.



II. APA review

 Young complains that the receipt of the dealer letters constitutes an "unlawful procedure"
under section 2001.174 requiring reversal of the Board's September 29 order. Further, Young contends
that the dealer letters and Connolly-Ancira conversation constitute impermissible ex parte communications. 
The trial court filed findings of fact and conclusions of law on these topics. (9) While Young does not
specifically challenge all the trial court's findings, Young's arguments impliedly attack the trial court's
findings of fact. We attach to findings of fact the same weight that we attach to a jury's verdict upon jury
questions. Des Champ v. Featherston, 886 S.W.2d 536, 541 (Tex. App.--Austin 1994, no writ). A
trial court's findings are reviewed for factual sufficiency of the evidence under the same legal standards as
applied to review jury verdicts. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). When conducting
a factual sufficiency review, the reviewing court must weigh all the evidence in the record. Id. Findings may
be overturned only if they are so against the great weight and preponderance of the evidence as to be
clearly wrong and unjust. Id.


Dealer letters

 The trial court found the following facts were established at trial and transpired between
the date of the August 11 announcement at the public hearing and the September 29 reversal of the Board's
initial decision: after August 11, the Board received letters written by automobile dealers who were not
parties to the contested case; Young submitted to the Board a letter written by Keith Young in response
to one of the dealer letters; Young received copies of the dealer letters and had an opportunity to respond
to the letters or seek relief prior to the Board's meeting on September 29, 1994; and a preponderance of
the evidence showed that the dealer letters did not result in harm to Young or prejudice Young's substantial
rights in the proceeding. Accordingly, the trial court concluded that the dealer letters did not violate the
APA prohibition on ex parte communications and did not result in harm or prejudice to Young's substantial
rights.

 Ample evidence supports the trial court's conclusion that the dealer letters did not violate
section 2001.061, the ex parte provision. Section 2001.061 provides:


(a) Unless required for the disposition of an ex parte matter authorized by law, a member
or employee of a state agency assigned to render a decision or to make findings of fact
and conclusions of law in a contested case may not directly or indirectly communicate
in connection with an issue of fact or law with a state agency, person, party, or a
representative of those entities, except on notice and opportunity for each party to
participate.



Tex. Gov't Code Ann. § 2001.061 (West 1998) (emphasis added). Assuming without deciding the dealer
letters addressed issues of fact or law, the last phrase of section 2001.061 sets forth an exception to the
general prohibition on ex parte communications. Where each party is on notice and has an opportunity
to participate, the communication does not violate section 2001.061. Such is the situation here.

 The appellate record reflects that Young received copies of all the dealer letters before the
September 29 hearing. Young received the first dealer letter, written by Ancira and dated August 29, from
appellee GM on September 1 and the remainder from the Board over time by September 28. Thus, Young
was on notice that the dealers were sending letters to the Board in hope of encouraging a rehearing, and
he was fully informed as to the content of the communications. Moreover, Keith Young wrote a letter to
the Board dated September 14, 1994, in response to the first dealer letter. Young, therefore, had an
opportunity to participate, availed itself of the opportunity, and presumably could have responded further
without restriction. Keith Young testified that Young did not object to the first dealer letter, seek a
continuance from the Board, request an additional discovery period, or ask that Connolly be recused
before the Board met again on September 29. That Young was not allowed to respond at the actual
September 29 hearing does not outweigh the other facts establishing Young's notice of the dealer letters
and opportunity to participate. Under these circumstances, we conclude that the evidence was factually
sufficient to support the trial court's findings that the dealer letters, more in the nature of amicus curiae
pleas, did not violate section 2001.061. (10) Consequently, we need not address the trial court's findings and
the parties' arguments regarding alleged harm stemming from receipt of the dealer letters. (11) Further,
although Young argues the Board reached its decision through unlawful procedure, Young does not
demonstrate how the process unlawfully prejudiced its substantial rights.


Connolly-Ancira Conversation

 In its findings of fact, the trial court found that a conversation between Connolly and Ancira
occurred sometime after August 11 and before September 7 regarding the contested case, but that this
conversation did not involve discussion of litigious facts or issues of law. (12) On appeal, Young challenges
the trial court's failure to find that the Connolly-Ancira conversation involved litigious facts.

 Apparently, Keith Young and Ancira had two conversations about the dispute over
Jupiter's relocation application: one on September 7, 1994, and one on November 21, 1994. At trial,
Keith Young testified that during the September 7 conversation, Ancira said he had been talking to
Connolly. Keith Young stated that Ancira told him, "Don't worry about it. T.J. Connolly is a friend of
longstanding, and he's pro-dealer, and he just has to clean up some mistakes and errors that he made." 
In his testimony, however, Ancira denied speaking with Connolly about this case before his September 7
conversation with Keith Young, testified that he did not tell Keith Young that he had spoken with Connolly,
and further denied having any conversation about this case with Connolly from September 7 to November
21. Ancira also testified that he did not even know Young was involved in the case before Keith Young
told him on September 7.

 Regarding the November 21 conversation, the evidence revealed that Keith Young secretly
taped this conversation with Ancira, and the tape was introduced into evidence. On the tape, Keith Young
asks Ancira what Connolly meant by "clean up his mess" and "straighten out his errors." Ancira responds
on the tape that Connolly said he would have to grant the rehearing because he could not stop a process
"they had a right to" unless the evidence was so overwhelming, but the split in the vote to begin with
indicated the evidence was not so overwhelming that it did not merit a rehearing. In his testimony at trial,
Ancira offered an explanation for his comments on the tape. Ancira suggested that Connolly called
Ancira's office after he received Ancira's August 29 letter and left a message with the secretary containing
the information. Connolly, though, testified that he did not read the August 29 letter until after the
September 29 hearing and did not recall speaking to Ancira's secretary about the case before November
21.

 Connolly also testified at the district court hearing that he did not speak to Ancira about
this case before the September 29 hearing and that the first time he spoke to Ancira about this case was
around December 9, 1994. Except for Ancira's August 29 letter, Connolly stated that Ancira did not
communicate anything to him about the case. The trial court asked Connolly if he was aware of any
improper ex parte communication to him, either directly or indirectly, on behalf of GM that resulted in the
reversal of the Board's decision. Connolly answered "Absolutely none, direct or indirect, your Honor."

 Furthermore, on cross-examination, Keith Young stated that his only basis of knowledge
pertaining to any Connolly-Ancira conversation was what Ancira told him; he did not actually hear any
conversation between Connolly and Ancira. Additionally, Connolly never indicated to Keith Young that
there was an impermissible conversation between Connolly and Ancira. Keith Young also admitted that,
although he claimed to have known of a conversation between Connolly and Ancira by September 7, he
did nothing to apprise the Board of this situation before the September 29 hearing.

 The prohibition against ex parte communications was designed to prevent litigious facts
coming before agency decision makers without becoming part of the record in the contested case. See
Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n, 863 S.W.2d 742, 751 (Tex. App.--Austin
1993, writ denied); Galveston County v. Texas Dep't of Health, 724 S.W.2d 115, 119-21 (Tex.
App.--Austin 1987, writ ref'd n.r.e.). The mere fact that an ex parte communication occurred is not
sufficient to establish a violation of the constitutional guarantees of procedural due process of law. See
Smith v. Houston Chem. Servs., Inc., 872 S.W.2d 252, 278 (Tex. App.-- Austin 1994, writ denied). 
A violation of the prohibition against ex parte communications is not shown unless a party establishes that
the content of the ex parte conversation came within the prohibition. Lone Star, 863 S.W.2d at 751.

 Clearly, the evidence introduced at trial conflicts as to whether a conversation between
Connolly and Ancira occurred and, if so, the content of the conversation. The trial court, as the sole fact
finder, found that, although a conversation had occurred, it did not involve litigious facts. It is not within
the province of the reviewing court to interfere with the fact finder's resolution of conflicts in the evidence
or to pass on the weight or credibility of the witnesses' testimony. See State Farm Mut. Auto. Ins. Co.
v. Cobos, 901 S.W.2d 585, 587 (Tex. App.--El Paso 1995, writ denied) (citing Benoit v. Wilson, 239
S.W.2d 792 (Tex. 1951)). After reviewing all the pertinent evidence, we conclude that the trial court's
failure to find that the conversation involved litigious facts is not so overwhelming as to be clearly wrong
and unjust. Further, since the evidence conflicts as to the content of the conversation, we cannot say the
conversation came within the prohibition as a matter of law. See Lone Star, 863 S.W.2d at 751. Based
on our conclusion, we need not address Young's other arguments concerning the Connolly-Ancira
conversation. For the foregoing reasons, we overrule Young's first point of error.

 In its final point of error, Young contends that the trial court abused its discretion by
excluding the deposition testimony of two GM officials. The trial court excluded the testimony under Texas
Rule of Civil Procedure 215.5 because Young failed to establish good cause for not timely identifying them
in discovery. Relying on Henry S. Miller Co. v. Bynum, 836 S.W.2d 160 (Tex. 1992), for the
proposition that exclusion of insufficiently identified witnesses can be overcome by a showing of good cause
that includes prior deposition and party status, Young argues the testimony should have been admitted
because both witnesses had been deposed and they were officials of GM, a party to the case. However,
in Bynum the supreme court found good cause existed where the undisclosed witness had been deposed
and was the only individual named as a party. Id. at 162. Young asks this Court to extend good cause
one step beyond Bynum to include undisclosed witnesses who are deposed employees of a corporation
that is only one of several parties to the lawsuit. This we decline to do. Young's fourth point of error is
overruled.


CONCLUSION

 Because we have overruled Young's first, second, third, and fourth points of error, we
affirm the judgment of the trial court.



 

 Marilyn Aboussie, Justice

Before Justices Aboussie, Jones and Kidd

Affirmed

Filed: July 30, 1998

Publish

1. Appellees are the Texas Motor Vehicle Board, Jupiter Chevrolet-Geo, Inc., and General Motors
Corporation. For convenience, they will be referred to collectively as "appellees."
2. This reference is to the Motor Vehicle Commission Code ("the Code").
3. GM's Motors Holding Division ("MHD") facilitates dealership assistance programs. The MHD
creates dealership opportunities for individuals, principally minorities, who have acquired the knowledge,
experience, and expertise to invest in a dealership but lack the necessary capital. At the time Young initially
protested Jupiter's relocation, these types of programs were not illegal in Texas nor were they expressly
authorized. However, the Legislature has since amended the Code to include a provision which authorizes
these types of assistance programs in section 5.02(b)(25) of the Code. See Tex. Rev. Civ. Stat. Ann. art.
4413(36) (West Supp. 1998).
4. See Tex. Gov't Code Ann. § 2001.171 (West 1998).
5. See Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997).
6. Young explains that forty-five days from August 11 was Sunday, September 25, making Monday,
September 26 the applicable day for filing purposes.
7. While the supreme court did not address the issue before us, its opinion reflects that the parties were
present when the Board issued an oral order. See Meador-Brady Management Corp. v. Texas Motor
Vehicle Comm'n, 866 S.W.2d 593, 594 (Tex. 1995). Although the non-prevailing party's motion for
rehearing would have been untimely if the oral order had triggered the motion for rehearing timetable, the
supreme court held that the motion for rehearing was timely as it was filed within five days of personal
notification of the signed, final order and one day after the Board mailed the final order to the party. See
Meador-Brady, 866 S.W.2d at 595-96.
8. Furthermore, this Court has indicated its reluctance to allow an oral rendition of an order, made in
the presence of the adversely affected party, to trigger the motion for rehearing timeline. See Mednick v.
Texas State Bd. of Pub. Accountancy, 933 S.W.2d 336, 337-38 n.2 (Tex. App.--Austin 1996, writ
denied).
9. Normally, a trial court does not file findings of fact and conclusions of law in administrative law cases. 
However, where, as here, a party alleges that procedural irregularities occurred before the agency, the trial
court may receive evidence of the alleged procedural irregularities. See Tex. Gov't Code Ann. §
2001.175(e) (West 1998).
10. Appellees Jupiter and GM point out that the American Automobile Manufacturers Association filed
an amicus brief in support of the motions for rehearing and Young does not complain of this filing.
11. The parties devote a great deal of argument to the harm aspect of prohibited ex parte
communications in light of this Court's opinion in City of Stephenville v. Texas Parks and Wildlife
Department, 940 S.W.2d 667 (Tex. App.--Austin 1996, writ denied). In Stephenville, the trial court
found that improper ex parte communications had occurred and, further, that these communications had
influenced the Board's decision in violation of the parties' rights. Specifically, the trial court found that the
applicants violated the Open Meetings Act and both the bribery and improper influence sections of the
Texas Penal Code. See Stephenville, 940 S.W.2d at 671. The trial court also denounced the conduct
of the applicants and the commission. Id. The current situation is distinguishable from Stephenville. Here,
the trial court failed to find improper violations and instead found facts in favor of Jupiter, GM, and the
Board.
12. Accordingly, the trial court concluded that the Connolly-Ancira conversation was not in violation
of section 2001.061. In addition, the trial court found that the evidence was insufficient to show that the
Connolly-Ancira conversation resulted in harm to Young or prejudiced Young's substantial rights in the
proceeding. The trial court, therefore, concluded that Young failed to show the Connolly-Ancira
conversation harmed or prejudiced its substantial rights.


ees."
2. This reference is to the Motor Vehicle Commission Code ("the Code").
3. GM's Motors Holding Division ("MHD") facilitates dealership assistance programs. The MHD
creates dealership opportunities for individuals, principally minorities, who have acquired the knowledge,
experience, and expertise to invest in a dealership but lack the necessary capital. At the time Young initially
protested Jupiter's relocation, these types of programs were not illegal in Texas nor were they expressly
authorized. However, the Legislature has since amended the Code to include a provision which authorizes
these types of assistance programs in section 5.02(b)(25) of the Code. See Tex. Rev. Civ. Stat. Ann. art.
4413(36) (West Supp. 1998).
4. See Tex. Gov't Code Ann. § 2001.171 (West 1998).
5. See Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997).
6. Young explains that forty-five days from August 11 was Sunday, September 25, making Monday,
September 26 the applicable day for filing purposes.
7. While the supreme court did not address the issue before us, its opinion reflects that the parties were
present when the Board issued an oral order. See Meador-Brady Management Corp. v. Texas Motor
Vehicle Comm'n, 866 S.W.2d 593, 594 (Tex. 1995). Although the non-prevailing party's motion for
rehearing would have been untimely if the oral order had triggered the motion for rehearing timetable, the
supreme court held that the motion for rehearing was timely as it was filed within five days of personal
notification of the signed, final order and one day after the Board mailed th