YOUNG CHEVROLET, INC., Appellant,

v.

The TEXAS MOTOR VEHICLE BOARD; Jupiter Chevrolet–Geo, Inc., d/b/a Newman Chevrolet; and General Motors Corp., Appellees.

No. 03–97–00097–CV.

Court of Appeals of Texas, Austin.

July 30, 1998.

Renea Hicks, George, Donaldson & Ford, L.L.P., Austin, for Appellant.

Hal L. Sanders, Strasburger & Price, L.L.P., Austin, for General Motors Corp.

Dan Morales, Attorney General, Priscilla Hubenak, Assistant Attorney General, Austin, for Texas Motor Vehicle Board.

Before ABOUSSIE, JONES and KIDD, JJ.

ABOUSSIE, Justice.

Appellant Young Chevrolet, Inc. ("Young") appeals the district court's judgment affirming a final order issued by the Texas Motor Vehicle Board ("Board"). Jupiter Chevrolet–Geo, Inc. ("Jupiter") applied to relocate its car dealership, and despite Young's protest, the Board granted the application.[1] The district court affirmed the Board's action. In this appeal, Young (1) challenges the Board's jurisdiction to render the final order, (2) contends the trial court should not have dismissed its independent due process claim, (3) complains of alleged procedural irregularities, and (4) objects to the trial court's exclusion of evidence. We will affirm.

## STATEMENT OF FACTS

In May 1993, Jupiter applied to the Board to relocate the dealership approximately one mile. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36) (West Supp.1998).[2] Young, a nearby Chevrolet dealership owned and operated by Keith Young, contested Jupiter's application. *Id.* General Motors Corporation ("GM") intervened in support of Jupiter's application to relocate. After a hearing was held, the examiner issued a proposal for decision recommending that the Board grant Jupiter's application to relocate. At the Board's meeting on August 11, 1994, the Board heard arguments from both sides, voted to reject the examiner's recommendation, and orally denied Jupiter's request to relocate. Thereafter, the decision and order were reduced to writing, and, on behalf of the Board, Chairman T.J. Connolly signed the written order memorializing the Board's decision on August 15, 1994. The final order was then mailed and faxed to the parties on August 16, 1994.

Jupiter and GM filed extensive motions for rehearing. The written order had adopted all of Young's proposed findings of fact and conclusions of law, and GM especially was concerned about the conclusion of law that GM was unreasonably discriminating among Jupiter, Young, and other Chevrolet dealers through its Motors Holding Division's ownership interest in Jupiter.[3] As an exhibit to its motion for rehearing, GM attached a letter from San Antonio dealer Ernesto Ancira, recounting the importance of the MHD program to him and his participation in the program. Other dealership owners supportive of the MHD sent similar letters to the executive director of the Board, Brett Bray, who forwarded the letters to the members of the Board and sent copies to all the parties' counsel. During the interim between the Board's August decision denying Jupiter's relocation and its consideration of the motions for rehearing, nine dealers who were not parties to the contested case, including Ancira, submitted letters to the Board.

The Board reconvened on September 29, 1994, to consider the motions for rehearing filed by Jupiter and GM. Without hearing argument, the Board voted to grant the motions for rehearing and vacated its prior order. Accordingly, the Board adopted the examiner's proposed findings of fact and conclusions of law and granted Jupiter's applica-

1. Appellees are the Texas Motor Vehicle Board, Jupiter Chevrolet–Geo, Inc., and General Motors Corporation. For convenience, they will be referred to collectively as "appellees."

2. This reference is to the Motor Vehicle Commission Code ("the Code").

3. GM's Motors Holding Division ("MHD") facilitates dealership assistance programs. The MHD creates dealership opportunities for individuals, principally minorities, who have acquired the knowledge, experience, and expertise to invest in a dealership but lack the necessary capital. At the time Young initially protested Jupiter's relocation, these types of programs were not illegal in Texas nor were they expressly authorized. However, the Legislature has since amended the Code to include a provision which authorizes these types of assistance programs in section 5.02(b)(25) of the Code. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36) (West Supp.1998).

tion for relocation. Young then filed a motion for rehearing, which the Board denied.

Seeking judicial review, Young filed suit in district court. Young brought suit under the Administrative Procedure Act ("APA")[4] and further sought a declaratory judgment pursuant to the Uniform Declaratory Judgments Act[5] that its rights were violated because the Board failed to follow the APA. Appellees filed a plea to the jurisdiction on Young's declaratory judgment action which the trial court granted. A bench trial was then held to determine Young's allegations under the APA that *ex parte* communications had tainted the Board's September 29 decision. Specifically, Young contended that the members of the Board erroneously considered the nine dealer letters and that Connolly had participated in an illegal conversation with a nonparty, Ancira. The district court concluded that neither the dealer letters nor the Connolly–Ancira conversation were in violation of the APA or, if they were, they had not harmed Young or prejudiced its substantial rights. Consequently, the district court affirmed the Board's final order approving Jupiter's application to relocate.

Young now brings this appeal, complaining for the first time on appeal that the Board did not have jurisdiction to render the September 29 order in which it reversed itself or, alternatively, the Board's first order became final and unappealable because it was not reheard in a timely fashion. Further, Young contends that the trial court should not have dismissed its independent due process claims, the *ex parte* communications violate the APA, and the trial court abused its discretion in excluding the deposition testimony of two GM officials.

## DISCUSSION

■ Young's second and third points of error challenge the Board's jurisdiction to render the second order in which it reversed itself and approved Jupiter's application for relocation. Appellees respond that the

Board did have jurisdiction to render the second order and that Young waived these points of error by failing to include them in its motion for rehearing before the Board or in its pleadings to the district court. In its reply brief, Young does not deny that these issues were not presented to the Board and district court; rather, it argues they pertain to subject matter jurisdiction and cannot be waived. We agree with Young and will address the points of error. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993) (subject-matter jurisdiction is essential to court's authority to decide case); *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 893 (Tex.1986) (lack of jurisdiction is fundamental error and may be raised for first time on appeal); *S.C. San Antonio, Inc. v. Texas Dep't of Human Servs.*, 891 S.W.2d 773, 776 (Tex.App.—Austin 1995, writ denied) (jurisdictional challenge may be raised for first time on appeal).

■ Young asserts in its second point of error that the motions for rehearing filed by Jupiter and GM were overruled by operation of law before the Board's change in position; therefore, Young contends the Board's first order denying the application is its final decision. Young arrives at this conclusion by arguing that the Board's *oral* pronouncement on August 11, for which the attorneys for both parties were present, triggered the motion for rehearing timetables. Young relies on the APA provisions which provide that a decision which may become final must be in writing or stated in the record and that a party in a contested case shall be notified either personally or by mail of the decision. *See* Tex. Gov't Code Ann. §§ 2001.141(a), .142(a) (West 1998). Young takes the position that the Board had forty-five days from August 11 to act on the motions for rehearing or the motions would be overruled by operation of law and the August 11 decision would become final and unappealable. *See id.* § 2001.144 (West 1998). By Young's calculations, the Board's action had to occur by September 26.[6] Since the Board did not act

---

4. *See* Tex. Gov't Code Ann. § 2001.171 (West 1998).

5. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.003 (West 1997).

6. Young explains that forty-five days from August 11 was Sunday, September 25, making Monday, September 26 the applicable day for filing purposes.

on the motions until September 29, three days after Young argues they were overruled by operation of law, the Board had no jurisdiction to promulgate the September 29 order because the August 11 oral decision already had become final. We disagree with Young's position that the presence of the parties at the Board's oral pronouncement of the decision triggered the timeline and rendered the motions for rehearing untimely. Instead, we hold that, under these facts, the time period for ruling on a motion for rehearing before the Board commences when the signed, written order is mailed to the parties.

■ The Board had forty-five days from the date on which Jupiter was notified of the final order to act on the motions for rehearing or else the motions would be overruled by operation of law. *See id.* § 2001.146(c) (West 1998). Under the APA, an order that could become final can be stated in the record or written. *See id.* § 2001.141(a). However, the APA only establishes the "*minimum* standards of uniform practice and procedure for state agencies." *See id.* § 2001.001(1) (West 1998) (emphasis added); *Mednick v. Texas State Bd. of Pub. Accountancy,* 933 S.W.2d 336, 338 (Tex.App.—Austin 1996, writ denied). Here, section 3.08(g) of the Code governing the Board requires the Board to render a final *written* order. *See* Tex.Rev.Civ. Stat. Ann. art. 4413(36). The supreme court has held that a final order of the Board is not rendered until it is signed. *See Meador–Brady Management Corp. v. Texas Motor Vehicle Comm'n,* 866 S.W.2d 593, 595 (Tex. 1993).[7] Thus, we conclude that the signed, written order of the Board, and not the oral pronouncement of the decision, sets in motion the rehearing stage of the proceeding. The APA allows for notifying parties of an order either personally or by mail. *See* Tex.

Gov't Code Ann. § 2001.142(a). A party receiving notification by mail is deemed to have notice of the decision on the day the written order is mailed to the party. *See* Tex. Gov't Code Ann. § 2001.142(c) (West 1998). Consequently, we further conclude that, when the parties are notified by mail, the time period for ruling on a motion for rehearing commences when the signed, written order of the Board is mailed to the parties.[8]

Under our holding, the Board had forty-five days from the date the written order was mailed to the parties, August 16, to rule on the motions for rehearing. The Board's action on September 29 was within this forty-five day period. Accordingly, the Board had jurisdiction to grant the motions for rehearing and to issue the September 29 order approving Jupiter's application for relocation. Young's second point of error is overruled.

Young argues, alternatively, in its third point of error that the Board's August 15 written order became final because it was not overruled in a timely fashion. The extent of Young's argument turns on the position that the motions for rehearing filed by Jupiter and GM only challenged the Board's August 11 oral decision and not the August 15 written order and, further, that the Board's September 29 order only refers to the earlier date as well. However, only one Board decision could become final; it was orally announced on August 11, and, as required by the Code, memorialized in the written order which was signed by Connolly on behalf of the Board on August 15. Reference in the motions for rehearing to the August 11 decision does not render the request for rehearing infirm because it was on August 11 that the Board voiced its decision to deny Jupiter's application. The record reflects no un-

---

7. While the supreme court did not address the issue before us, its opinion reflects that the parties were present when the Board issued an *oral* order. *See Meador–Brady Management Corp. v. Texas Motor Vehicle Comm'n,* 866 S.W.2d 593, 594 (Tex.1993). Although the non-prevailing party's motion for rehearing would have been untimely if the oral order had triggered the motion for rehearing timetable, the supreme court held that the motion for rehearing was timely as it was filed within five days of personal notification of the signed, final order and one day after

the Board mailed the final order to the party. *See Meador–Brady,* 866 S.W.2d at 595–96.

8. Furthermore, this Court has indicated its reluctance to allow an oral rendition of an order, made in the presence of the adversely affected party, to trigger the motion for rehearing timeline. *See Mednick v. Texas State Bd. of Pub. Accountancy,* 933 S.W.2d 336, 337–38 n. 2 (Tex. App.—Austin 1996, writ denied).

certainty as to the action of the Board being challenged, and we reject this hyper-technical contention. Young's third point of error is overruled.

In its first point of error, Young complains that the GM-orchestrated submissions of testimonial evidence outside the record, alone or in combination with Connolly's *ex parte* communication with Ancira about the contested case, deprived Young of its constitutional procedural due process rights, independent of APA strictures, as well as of its rights under the APA. Young raises three arguments under this claim. First, Young argues it has a right to bring a due process claim apart from the APA, and the trial court erred in dismissing the claim. Next, Young asserts the Board's receipt of the dealer letters constitutes unlawful procedure in violation of APA section 2001.174. Finally, Young maintains that the letters and Connolly–Ancira conversation constitute impermissible *ex parte* communications about the merits of the case under section 2001.061. We will reject all of Young's contentions and overrule the point of error.

## I. Due Process

Young included a request for a declaratory judgment action in its pleadings to the trial court, complaining that the Board's conduct in not following the APA's requirements violated its constitutional rights to due process under both the Texas and United States Constitutions. This due process claim was made independent of, and in addition to, Young's administrative appeal. Appellees filed a plea to the jurisdiction and took the position that Young could not pursue a separate due process claim on the very grounds that formed the basis of the administrative appeal. The trial court granted the plea to the jurisdiction and dismissed Young's inherent due process claim for want of jurisdiction. On appeal, Young argues it is entitled to pursue its separate due process claim. We disagree under these circumstances.

When a statute provides a method for attacking an agency order, a declaratory judgment action directed at that order will not lie. *See Ben Robinson Co. v. Texas Workers' Compensation Comm'n*, 934 S.W.2d 149, 153 (Tex.App.—Austin 1996, writ denied); *Texas Employment Comm'n v. Child, Inc.*, 738 S.W.2d 56, 58 (Tex.App.—Austin 1987, writ denied), *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Railroad Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 326 (Tex.App.—Austin 1984, no writ). This follows because a party is generally not entitled to redundant remedies. *See Robinson*, 934 S.W.2d at 153; *Child*, 738 S.W.2d at 58. In *Robinson*, we concluded that a declaratory judgment directed at the constitutional validity of a program, and not attacking the order itself, was permissible. *See Robinson*, 934 S.W.2d at 153. This, however, is not the case before us. Both Young's declaratory judgment action and APA appeal are directed at the validity of the Board's September 29 order in light of the alleged impermissible *ex parte* contacts. If Young prevailed in both actions, the relief would be the same. Consequently, the trial court did not err in dismissing Young's declaratory judgment action.

## II. APA review

Young complains that the receipt of the dealer letters constitutes an "unlawful procedure" under section 2001.174 requiring reversal of the Board's September 29 order. Further, Young contends that the dealer letters and Connolly–Ancira conversation constitute impermissible *ex parte* communications. The trial court filed findings of fact and conclusions of law on these topics.[9] While Young does not specifically challenge all the trial court's findings, Young's arguments impliedly attack the trial court's findings of fact. We attach to findings of fact the same weight that we attach to a jury's verdict upon jury questions. *Des Champ v. Featherston*, 886 S.W.2d 536, 541 (Tex. App.—Austin 1994, no writ). A trial court's findings are reviewed for factual sufficiency

---

**9.** Normally, a trial court does not file findings of fact and conclusions of law in administrative law cases. However, where, as here, a party alleges that procedural irregularities occurred *before the*

agency, the trial court may receive evidence of the alleged procedural irregularities. *See* Tex. Gov't Code Ann. § 2001.175(e) (West 1998).

of the evidence under the same legal standards as applied to review jury verdicts. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996). When conducting a factual sufficiency review, the reviewing court must weigh all the evidence in the record. *Id.* Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

### Dealer letters

The trial court found the following facts were established at trial and transpired between the date of the August 11 announcement at the public hearing and the September 29 reversal of the Board's initial decision: after August 11, the Board received letters written by automobile dealers who were not parties to the contested case; Young submitted to the Board a letter written by Keith Young in response to one of the dealer letters; Young received copies of the dealer letters and had an opportunity to respond to the letters or seek relief prior to the Board's meeting on September 29, 1994; and a preponderance of the evidence showed that the dealer letters did not result in harm to Young or prejudice Young's substantial rights in the proceeding. Accordingly, the trial court concluded that the dealer letters did not violate the APA prohibition on *ex parte* communications and did not result in harm or prejudice to Young's substantial rights.

▮ Ample evidence supports the trial court's conclusion that the dealer letters did not violate section 2001.061, the *ex parte* provision. Section 2001.061 provides:

(a) Unless required for the disposition of an *ex parte* matter authorized by law, a member or employee of a state agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not directly or indirectly communicate in connection with an issue of fact or law with a state agency, person, party, or a representative of those entities, *except*

on notice and opportunity for each party to participate.

Tex. Gov't Code Ann. § 2001.061 (West 1998) (emphasis added). Assuming without deciding the dealer letters addressed issues of fact or law, the last phrase of section 2001.061 sets forth an exception to the general prohibition on *ex parte* communications. Where each party is on notice and has an opportunity to participate, the communication does not violate section 2001.061. Such is the situation here.

The appellate record reflects that Young received copies of all the dealer letters before the September 29 hearing. Young received the first dealer letter, written by Ancira and dated August 29, from appellee GM on September 1 and the remainder from the Board over time by September 28. Thus, Young was on notice that the dealers were sending letters to the Board in hope of encouraging a rehearing, and he was fully informed as to the content of the communications. Moreover, Keith Young wrote a letter to the Board dated September 14, 1994, in response to the first dealer letter. Young, therefore, had an opportunity to participate, availed itself of the opportunity, and presumably could have responded further without restriction. Keith Young testified that Young did not object to the first dealer letter, seek a continuance from the Board, request an additional discovery period, or ask that Connolly be recused before the Board met again on September 29. That Young was not allowed to respond at the actual September 29 hearing does not outweigh the other facts establishing Young's notice of the dealer letters and opportunity to participate. Under these circumstances, we conclude that the evidence was factually sufficient to support the trial court's findings that the dealer letters, more in the nature of amicus curiae pleas, did not violate section 2001.061.[10] Consequently, we need not address the trial court's findings and the parties' arguments regarding alleged harm stemming from receipt of the dealer letters.[11] Further, although Young argues

---

10. Appellees Jupiter and GM point out that the American Automobile Manufacturers Association filed an amicus brief in support of the motions for rehearing and Young does not complain of this filing.

11. The parties devote a great deal of argument to the harm aspect of prohibited *ex parte* communi-

the Board reached its decision through unlawful procedure, Young does not demonstrate how the process unlawfully prejudiced its substantial rights.

*Connolly–Ancira Conversation*

In its findings of fact, the trial court found that a conversation between Connolly and Ancira occurred sometime after August 11 and before September 7 regarding the contested case, but that this conversation did not involve discussion of litigious facts or issues of law.[12] On appeal, Young challenges the trial court's failure to find that the Connolly–Ancira conversation involved litigious facts.

Apparently, Keith Young and Ancira had two conversations about the dispute over Jupiter's relocation application: one on September 7, 1994, and one on November 21, 1994. At trial, Keith Young testified that during the September 7 conversation, Ancira said he had been talking to Connolly. Keith Young stated that Ancira told him, "Don't worry about it. T.J. Connolly is a friend of longstanding, and he's pro-dealer, and he just has to clean up some mistakes and errors that he made." In his testimony, however, Ancira denied speaking with Connolly about this case before his September 7 conversation with Keith Young, testified that he did not tell Keith Young that he had spoken with Connolly, and further denied having any conversation about this case with Connolly from September 7 to November 21. Ancira also testified that he did not even know Young was involved in the case before Keith Young told him on September 7.

Regarding the November 21 conversation, the evidence revealed that Keith Young secretly taped this conversation with Ancira,

and the tape was introduced into evidence. On the tape, Keith Young asks Ancira what Connolly meant by "clean up his mess" and "straighten out his errors." Ancira responds on the tape that Connolly said he would have to grant the rehearing because he could not stop a process "they had a right to" unless the evidence was so overwhelming, but the split in the vote to begin with indicated the evidence was not so overwhelming that it did not merit a rehearing. In his testimony at trial, Ancira offered an explanation for his comments on the tape. Ancira suggested that Connolly called Ancira's office after he received Ancira's August 29 letter and left a message with the secretary containing the information. Connolly, though, testified that he did not read the August 29 letter until after the September 29 hearing and did not recall speaking to Ancira's secretary about the case before November 21.

Connolly also testified at the district court hearing that he did not speak to Ancira about this case before the September 29 hearing and that the first time he spoke to Ancira about this case was around December 9, 1994. Except for Ancira's August 29 letter, Connolly stated that Ancira did not communicate anything to him about the case. The *trial court* asked Connolly if he was aware of any improper *ex parte* communication to him, either directly or indirectly, on behalf of GM that resulted in the reversal of the Board's decision. Connolly answered "Absolutely none, direct or indirect, your Honor."

Furthermore, on cross-examination, Keith Young stated that his only basis of knowledge pertaining to any Connolly–Ancira conversation was what Ancira told him; he did not actually hear any conversation between

---

cations in light of this Court's opinion in *City of Stephenville v. Texas Parks and Wildlife Department*, 940 S.W.2d 667 (Tex.App.—Austin 1996, writ denied). In *Stephenville*, the trial court found that improper *ex parte* communications had occurred and, further, that these communications had influenced the Board's decision in violation of the parties' rights. Specifically, the trial court found that the applicants violated the Open Meetings Act and both the bribery and improper influence sections of the Texas Penal Code. *See Stephenville*, 940 S.W.2d at 671. The trial court also denounced the conduct of the applicants and the commission. *Id.* The current situation is distinguishable from *Stephenville*.

Here, the trial court failed to find improper violations and instead found facts in favor of Jupiter, GM, and the Board.

**12.** Accordingly, the trial court concluded that the Connolly–Ancira conversation was not in violation of section 2001.061. In addition, the trial court found that the evidence was insufficient to show that the Connolly–Ancira conversation resulted in harm to Young or prejudiced Young's substantial rights in the proceeding. The trial court, therefore, concluded that Young failed to show the Connolly–Ancira conversation harmed or prejudiced its substantial rights.

914

Connolly and Ancira. Additionally, Connolly never indicated to Keith Young that there was an impermissible conversation between Connolly and Ancira. Keith Young also admitted that, although he claimed to have known of a conversation between Connolly and Ancira by September 7, he did nothing to apprise the Board of this situation before the September 29 hearing.

■ The prohibition against *ex parte* communications was designed to prevent litigious facts coming before agency decision makers without becoming part of the record in the contested case. *See Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n,* 863 S.W.2d 742, 751 (Tex.App.—Austin 1993, writ denied); *Galveston County v. Texas Dep't of Health,* 724 S.W.2d 115, 119–21 (Tex. App.—Austin 1987, writ ref'd n.r.e.). The mere fact that an *ex parte* communication occurred is not sufficient to establish a violation of the constitutional guarantees of procedural due process of law. *See Smith v. Houston Chem. Servs., Inc.,* 872 S.W.2d 252, 278 (Tex.App.—Austin 1994, writ denied). A violation of the prohibition against *ex parte* communications is not shown unless a party establishes that the content of the *ex parte* conversation came within the prohibition. *Lone Star,* 863 S.W.2d at 751.

■ Clearly, the evidence introduced at trial conflicts as to whether a conversation between Connolly and Ancira occurred and, if so, the content of the conversation. The trial court, as the sole fact finder, found that, although a conversation had occurred, it did not involve litigious facts. It is not within the province of the reviewing court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *See State Farm Mut. Auto. Ins. Co. v. Cobos,* 901 S.W.2d 585, 587 (Tex.App.—El Paso 1995, writ denied) (citing *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951)). After reviewing all the pertinent evidence, we conclude that the trial court's failure to find that the conversation involved litigious facts is not so overwhelming as to be clearly wrong and unjust. Further, since the evidence conflicts as to the content of the conversation, we cannot say the conversation came within the prohibition as a matter of law. *See Lone Star,* 863 S.W.2d at 751. Based on our conclusion, we need not address Young's other arguments concerning the Connolly–Ancira conversation. For the foregoing reasons, we overrule Young's first point of error.

■ In its final point of error, Young contends that the trial court abused its discretion by excluding the deposition testimony of two GM officials. The trial court excluded the testimony under Texas Rule of Civil Procedure 215.5 because Young failed to establish good cause for not timely identifying them in discovery. Relying on *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160 (Tex. 1992), for the proposition that exclusion of insufficiently identified witnesses can be overcome by a showing of good cause that includes prior deposition and party status, Young argues the testimony should have been admitted because both witnesses had been deposed and they were officials of GM, a party to the case. However, in *Bynum* the supreme court found good cause existed where the undisclosed witness had been deposed and was the only individual named as a party. *Id.* at 162. Young asks this Court to extend good cause one step beyond *Bynum* to include undisclosed witnesses who are deposed employees of a *corporation* that is only one of several parties to the lawsuit. This we decline to do. Young's fourth point of error is overruled.

## CONCLUSION

Because we have overruled Young's first, second, third, and fourth points of error, we affirm the judgment of the trial court.