# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00272-CV

Basse Truck Line, Inc., Appellant

v.

Texas Natural Resource Conservation Commission, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. GN002813, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final judgment affirming an order of the Texas Natural

Resource Conservation Commission[1] (the "TNRCC") against Basse Truck Line, Inc. ("Basse")

requiring it to surface unpaved portions of its trucking facility.  As a result of a complaint about the

amount of dust Basse's facility emitted, the TNRCC required Basse to hire and work with a

consultant on a plan to surface unpaved areas of the facility responsible for the dust.  Basse filed suit

pursuant to the Administrative Procedure Act ("APA") for judicial review of the TNRCC order and

---

[1] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission ("TNRCC") to the Texas Commission on Environmental Quality, to be effective January 1, 2004.  The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform any act authorized by law under either title.  *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985.  On September 1, 2002, the agency began using its new name, while continuing to recognize the former.  In this opinion, we will refer to the agency as the TNRCC.

the TNRCC counterclaimed for enforcement of the order. *See* Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000 & Supp. 2003). The final judgment affirms the TNRCC order and in addition grants a permanent injunction ordering Basse to comply with the TNRCC order, assesses a civil penalty against Basse for violating that order, denies Basse's cross-motion for taking, and awards attorney's fees to the TNRCC. We will affirm the judgment of the district court in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Basse operates a trucking service in San Antonio. Its facility consists of a fueling station, a parking area for trucks and customers, covered garages, and an office. It operates around the clock, dispatching short and long haul trucks. The driveway and parking lots are unpaved. A resident living across the street from Basse complained to the TNRCC about the dust Basse's trucks kicked up as they entered and exited the facility. Finding the emission of dust from Basse's facility a nuisance,[2] the TNRCC recommended in an enforcement order that Basse work with an independent third-party consultant on a plan to surface the unpaved portions of its facility responsible for the dust and assessed Basse an administrative penalty of $2,500. *See* Tex. Health & Safety Code Ann. § 382.011 (West 2001). The initial order recommended that Basse be required to "pave" all areas of the yard subject to vehicular traffic. Basse complained about the cost of paving so the order was amended to remove the term "pave" and substitute a schedule for Basse to retain an independent

---

[2] The TNRCC found that Basse violated the Texas Clean Air Act ("Act") by allowing the discharge of dust in a concentration and duration adversely affecting humans, animals, plants, or property. *See* Tex. Health & Safety Code Ann. § 382.085(a), (b) (West 2001).

2

consultant to review the facility, recommend a plan for minimizing dust discharges, and verify that Basse implement the plan.

Basse requested a hearing before the State Office of Administrative Hearings ("SOAH"). *See* 30 Tex. Admin. Code § 70.109 ( 2003). The Administrative Law Judge ("ALJ") conducted a hearing on August 23, 1999, which attracted the attention of members of the neighborhood, some of whom made public comment. One of the neighbors was a state representative at the time who sent written comments to the TNRCC and the ALJ, urging that Basse be required to pave its truck yard and pay the maximum penalty.[3] The ALJ issued a proposal for decision ("PFD"), recommending that Basse surface the facility but recommending against the $2,500 penalty. The TNRCC's final order assessed a $2,500 administrative penalty and required Basse to surface all unpaved portions of its truck yard.[4]

Basse appealed the TNRCC's order to the district court, claiming that the order is tainted by *ex parte* communications, is unsupported by substantial evidence due to the TNRCC's failure to carry its burden of proof, and is otherwise defective on a variety of grounds. The TNRCC counterclaimed for enforcement of the order, noting that although Basse had suspended the

---

[3] The maximum penalty allowed by section 7.052 of the water code is $10,000 for each day of each violation. *See* Tex. Water Code Ann. § 7.052(b), (c) (West Supp. 2003).

[4] The Clerk's Record contains an unsigned TNRCC order omitting the $2,500 penalty. However, the TNRCC's brief contains a signed TNRCC order including the $2,500 penalty. The brief indicates that after the TNRCC adopted the Administrative Law Judge's proposal for decision, which recommended against the $2,500 penalty, the TNRCC excepted to that adoption and reinstated the penalty. There is no way to verify whether appellee's signed order is the official order of the TNRCC because there is no administrative record on file. In a letter to this Court dated July 25, 2002, the Travis County District Clerk's office said that its office had been unable to locate "any or all exhibits" since it relocated its storage area.

administistrative penalty by posting a supersedeas bond, its appeal of the order did not suspend enforcement of the requirement to surface the truck yard. *See* Tex. Gov't Code Ann. § 2001.176(b)(3) (West 2000). Alleging that Basse had not complied with that requirement, the TNRCC sought civil penalties, injunctive relief, and attorney's fees. *See* Tex. Water Code Ann. §§ 7.002, .032(b), .032(e), .052, .073, .105(a) (West 2000 & Supp. 2003).

The district court affirmed the TNRCC's order, granted the permanent injunction and denied Basse's cross action asserting a "taking" of its property. The district court ordered Basse to comply with the TNRCC's order, namely, to work with a consultant on a plan to surface the unpaved portions of its facility and to implement the plan. It also ordered Basse to pay $20,600 in civil penalties[5] and $14,200 in attorneys' fees.

Basse appeals by five issues, arguing that the district court erred in affirming the final order of the TNRCC and granting the permanent injunction because (1) Basse was denied due process because the final order is ambiguous and unconstitutionally vague; (2) it was denied due process and its rights were prejudiced by *ex parte* communications with the ALJ and the TNRCC; (3) the TNRCC's final order was not supported by substantial evidence; (4) the TNRCC's final order exceeded the agency's authority and constituted a taking; and (5) the pleadings and evidence are insufficient to support the injunction, attorney's fees and penalties, and the final order fails to comply with Texas Rule of Civil Procedure 683.

---

[5] A person who violates an order issued by the TNRCC under a statute within its jurisdiction may be assessed a civil penalty of not less than $50 nor greater than $25,000 for each day of each violation. *See* Tex. Water Code Ann. § 7.102 (West 2000). The district court assessed a penalty of $50 per day for each violation, for a total of $20,600.

## DISCUSSION

Authority to sue the TNRCC under the Texas Clean Air Act is found in section 382.032(a) of the health and safety code, which provides that "[a] person affected by a ruling, order, decision, or other act of the commission or of the executive director . . . may appeal the action by filing a petition in a district court of Travis County." Tex. Health & Safety Code Ann. § 382.032(a) (West 2001). We review the TNRCC's order *de novo* to determine whether its decision was invalid, arbitrary, or unreasonable as a matter of law. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 801 (Tex. App.—Austin 2000, pet. dism'd).

In its first issue, Basse alleges that the district court's final judgment affirming the TNRCC's order and granting a permanent injunction was so ambiguous and vague as to deny it due process. Basse complains about the underlying TNRCC order as well as the district court's mandatory injunction enforcing the order. Basse's real complaint is that the final order of the TNRCC, which requires Basse to "complete surfacing of all unpaved portions of its truck yard" is so vague and ambiguous that Basse can only, through surmise and conjecture, determine what is meant by "surfacing" and what its obligations are under the order.

In order to appeal an administrative agency's decision, a motion for rehearing is required. *See* Tex. Gov't Code Ann. § 2001.145 (West 2000). The complainant must succinctly set forth the legal or factual basis of the error sufficient to provide the agency notice of the alleged error so that it can either correct it or defend it. *See Brown v. Texas Dep't of Ins.*, 34 S.W.3d 683, 687 (Tex. App.—Austin 2000, no pet.). Basse failed to raise this issue either in its motion for rehearing

5

or in its points of error to the district court.[6] *See Carrizales v. Texas Dep't of Protective & Regulatory Servs.*, 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied) (party may not raise issue, even constitutional claim, for first time on appeal); *Gonzalez v. Texas Educ. Agency*, 882 S.W.2d 526, 528 (Tex. App.—Austin 1994, no writ) (failure to raise due process violation in motion for rehearing waives point). A constitutional challenge not properly raised in the district court is waived. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). Basse was required, first, to raise this issue in its motion for rehearing. It did not do so. It also failed to raise it in its points of error to the district court. Basse has waived this issue on appeal.

In its second issue, Basse contends that letters sent to the TNRCC and the ALJ by State Representative Ruth Jones McClendon, who requested stiffer penalties and tighter time limits for Basse's compliance, so tainted the administrative process that it was denied due process. An agency decision must be decided on the facts presented by the contestants, not by influences outside the record. *See Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 914 (Tex. App.—Austin 1998, pet. denied). *Ex parte* communications may inject litigious facts before the decision maker without giving a party the opportunity to rebut those facts. *See Vandygriff v. First Sav. & Loan Ass'n of Borger*, 617 S.W.2d 669, 672 (Tex. 1981); *Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n*, 863 S.W.2d 742, 751 (Tex. App.—Austin 1993, writ denied). Not all *ex*

---

[6] The record indicates that during the March 22, 2002 hearing, the district court voiced a concern that the order lacked specificity. Basse agreed and said that it felt that the order was "probably unconstitutionally vague." While criticizing its ambiguity, Basse praised the TNRCC's order for providing it with the latitude to decide what surfacing means. The district court read specific portions of the TNRCC's order and identified portions of the order it felt were vague and, at Basse's request, went on to amend the TNRCC's order, making it more specific.

*parte* communications, however, taint the administrative procedure.  *See Young Chevrolet*, 974 S.W.2d at 914.

The APA provides that an agency rendering a decision in a contested case "may not directly or indirectly communicate in connection with an issue of fact or law with a state agency, person, party, or a representative of those entities, except on notice and opportunity for each party to participate."  Tex. Gov't Code Ann. § 2001.061 (West 2000); *see also* 30 Tex. Admin. Code § 80.15 (2000).  The test is whether an opposing party had notice of the communication and an opportunity to participate.

In a letter dated August 5, 1999, written on her legislative letterhead and addressed to the chairman of the TNRCC, McClendon made a request to increase the penalties and tighten the time limits for Basse to "comply with regulations and laws put in place by the State of Texas." Noting that the executive director of the TNRCC had recommended a $2,500 penalty, McClendon said that "[t]he health of our seniors, children, and community surrounding the area in San Antonio, Texas is certainly worth more than $2,500."  McClendon argued for a stiffer penalty and referred to the factors for determining administrative penalties in the Texas Water Code.  *See* Tex. Water Code Ann. § 7.053 (West 2000).  Specifically, she referred to section 7.053(2)(A) "air quality in the region."[7]

---

[7] The Code provides factors such as "the nature, circumstances, extent, duration, and gravity of the prohibited act, . . . the health or safety of the public; . . . air quality . . . ; the history and extent of previous violations; . . . the degree of culpability; . . . demonstrated good faith; . . . any other matters that justice may require."  *See* Tex. Water Code Ann. § 7.053 (West 2000).

7

As you know, TNRCC's air quality division has monitored the Basse Trucking Company on June 8, 9, and 16 of 1998 and determined that Basse violated 30 TEX. ADMIN. CODE ch. 101 and TEX. HEALTH & SAFETY CODE ch. 382. I mention specific dates of monitoring because conversations between my staff and Mr. Carl Schnitz of the TNRCC Air Enforcement Section have indicated the State can only determine Basse's non-compliance by monitoring on specific dates. However, I believe that Basse's years of dust nuisance and air pollution warrant additional penalties as is allowed for in section "C" relating to the amount of penalty subsection (3)(A).

In her letter, McClendon indicated that the residents had "suffered through life-threatening illnesses because of respiratory ailments all believed to be caused from Basse's dust problem." Further, she claimed that Basse had not acted in good faith toward the community and had a history of "uncooperative behavior." Finally, she pointed out that in 1998 [San Antonio] Councilman Mario Salas offered to act as a conduit for negotiations between the residents and Basse. Basse, however, had failed to participate.

Around August 13, 1999, McClendon forwarded the August 5 letter to the ALJ. On August 19, 1999, she sent another letter to the ALJ reaffirming her support for the maximum penalty allowable, which was $10,000 per day. *See* Tex. Water Code Ann. § 7.052 (West 2000). Basse claims that McClendon's letters influenced the decisions made by the ALJ and the TNRCC.

The PFD noted the following:

One unusual aspect of this case was the receipt of public comment. Although common in permitting cases, it is rare in enforcement proceedings. A number of citizens from the vicinity of Respondent's business, as well as municipal and state officials, presented comments regarding their concerns about dust pollution in this area and their views on the long-term history of this problem.

The ALJ concluded that Basse was a source for the dust. However, she recommended against any administrative penalty.

There is absolutely no indication that McClendon's letters influenced either the ALJ's PFD or the TNRCC's order. In fact, the ALJ recommended against the administrative penalty McClendon so strongly recommended. Basse contends that the TNRCC must have been influenced by the letters because it ignored the ALJ's recommendation against a penalty and assessed a $2,500 penalty. Basse says that while it is true that the TNRCC did not heed McClendon's plea for the imposition of a $10,000 penalty, it must have been influenced by her letters because it subsequently imposed a $2,500 penalty.

The prohibition against *ex parte* communications is designed to prevent the injection of new facts in the proceeding while denying a party from rebutting those facts. *Young Chevrolet*, 974 S.W.2d at 914. The mere fact that an *ex parte* communication occurred is not sufficient to establish a violation of due process. *Id.* Section 2001.061 of the government code sets out an exception to the general prohibition on *ex parte* communications. *See* Tex. Gov't Code Ann. § 2001.061(a). When each party is on notice and has an opportunity to participate, the communication does not violate section 2001.061.

Basse had notice and an opportunity to be heard regarding McClendon's letters. Basse received the August 5 letter several days before the August 23 hearing. Thus, it had the opportunity to prepare and present evidence to contradict any statements of law or fact appearing in the letter. It received the August 19 letter at the August 23 hearing, during a break. Upon receipt of McClendon's August 19 letter, Basse could have moved for a continuance to provide it with more

9

time to prepare against her allegations, although the majority of the letter was a reaffirmation of her earlier letter. *See Young Chevrolet*, 974 S.W.2d at 912. It was incumbent upon Basse to object if it felt that the public comment or McClendon's letters were prejudicing its rights. *See id.* In short, provided with notice and given the opportunity to participate, Basse failed to do so.

*Young Chevrolet* is instructive. In *Young Chevrolet*, this Court was also presented with a situation where letters from outside parties were forwarded to the decision makers. In that case, like here, the party complaining about the letters did not, among other things, object to the first letter, seek a continuance, or request an additional discovery period. *Id.* We held that the letters did not violate *ex parte* prohibitions based on facts establishing notice of the letters and an opportunity to participate. *See id.*

Finally, in deciding whether letters written by non-parties in an administrative hearing were *ex parte* communications, this Court held that such letters are more in the nature of "amicus curiae pleas." *Id.* As in *Young Chevrolet*, the letters at issue here came from a non-party and Basse was made aware of their content. The facts recited in the letters are McClendon's public comment, as an interested member of the community. Basse recognizes that public comment is valuable in administrative proceedings but argues that McClendon's letters are particularly egregious because of her position in the legislature. However, McClendon's official representative capacity does not prevent her from offering public comment, especially in light of the fact that she is a member of the affected community. Because Basse received copies of the letters and had an opportunity to respond to their content, yet failed to do so, we overrule issue two.

10

In its third issue, Basse contends that the final order of the TNRCC is not supported by substantial evidence.[8] First, Basse contends that the ALJ, and subsequently the TNRCC applied the wrong evidentiary standard in determining Basse's violations. Basse argues that the ALJ applied a "sufficiency of the evidence" standard, rather than the required "preponderance of the evidence" standard. Second, it complains that there is a fatal variance between the TNRCC's finding that a violation occurred on June 16th, 1998, and the proof adduced at the hearing documenting a violation on June 9, 1998.

In reviewing a substantial evidence point of error, we consider whether reasonable minds could have reached the same conclusion as did the TNRCC. *See Nobles v. Employee Ret. Sys.*, 53 S.W.3d 483, 490-91 (Tex. App.—Austin 2001, no pet.). The TNRCC did not have to reach the correct conclusion but a conclusion reasonably supported by the evidence. *See id.* The agency's decision is presumed to be supported by substantial evidence and the party contesting the decision has the burden of proving otherwise. *See id.* Furthermore, we cannot substitute our judgment as to the weight of the evidence on questions on which the TNRCC has discretion. *See id.*

In her PFD, the ALJ concluded that "there is sufficient evidence to show that the Respondent's [Basse's] business operation as conducted on June 16, 1998, emitted dust in sufficient

---

[8] Specifically, Basse contends that Findings of Fact 9, 10, 11, 14, 15, and 20 and Conclusions of Law 4, 6, 7, and 8 were not supported by substantial evidence. However, the only finding or conclusion that Basse briefed was finding of fact number 14, which found that "the complainant, Willie Brown, across the street regularly experienced filming of his car, attic, air conditioner and yard with dust and that Basse's facility was the source of dust on the dates of the TNRCC's investigation." Because Basse has failed to adequately brief its other complaints regarding findings of fact and conclusions of law, we will only address its complaint regarding finding of fact 14. *See* Tex. R. App. P. 38 ("brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

11

quantity to cause or tend to cause a nuisance." Because the ALJ used the term "sufficient" in her conclusion, Basse contends she applied a "sufficiency of the evidence" standard, rather than the required "preponderance of the evidence" standard in finding that it was the source for the dust.

Basse has the burden of proving that the agency's decision is not supported by substantial evidence. *Id.* at 490. That the ALJ used the word "sufficient" does not necessarily establish that the ALJ or the TNRCC used a lower standard of review. In fact, the record is clear and substantial, in part based on Basse's own admissions, that the dust originated from Basse's facility. The ALJ noted, "Further, there is little disagreement that dust emanates from Respondent's business at some times. Respondent acknowledged that to be the case, especially in dry months." Moreover, the TNRCC's order lists three items contributing to the decision: the PFD, the evidence, and the arguments at the public meeting before the TNRCC Commissioners.

Next, Basse alleges that there is a fatal variance between the proof established at the hearing and the allegation contained in the TNRCC's report. Initially, the TNRCC's site investigation began on June 8, 1998. The investigator observed dust on complainant Willie Brown's car. She instructed him to wipe it clean. She returned the next day and noted that the car once again was dusty. She returned on June 16, 1998 to make a videotape record. Basse contends that the videotape on June 16 showing dust blowing off Basse's facility could not support the contention that Basse's facility was the source for dust on June 9. We disagree. Clearly, the investigator was conducting an ongoing investigation occurring in several logical stages, which Basse recognized. Additionally, when she videotaped her observations on June 16, she was also observing other potential sources for the dust, including the TIP truck company next to Basse, and traffic on Belgium

12

Lane. Her observations indicated that TIP did not create much dust, traffic dust did not go very far, and Basse's dust was both significant and traveled quite a distance.

The ALJ noted that the TNRCC does not need to establish that Basse was the source for the dust on June 9. It need only show that Basse was a source for air pollution. That the TNRCC found Basse violated the Texas Clean Air Act alone is sufficient to support its decision to fine Basse. *See* Tex. Health & Safety Code Ann. §§ 382.001, .085; 30 Tex. Admin. Code § 101.4. While the evidence adduced on June 16 cannot establish the source for the dust on Brown's car on June 9, that evidence did establish Basse's violation on June 16. In fact, the TNRCC only found one violation— June 16, 1998. So, while Brown's complaint may have prompted the investigation, his complaint did not need to be the sole basis for finding a violation. We overrule issue three.

In its fourth issue, Basse contends that the cost of surfacing its facility exceeded the value of the property, amounting to an unconstitutional taking. Both the United States and Texas Constitutions prohibit the taking of private property for public use without just compensation. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). "Takings" may be physical or regulatory in nature. *See id*. Basse argues that the TNRCC has, for the benefit of a group of private citizens, regulated its property to such an extent that the regulation was tantamount to a physical taking.

A property owner deprived of all economically productive or beneficial use of his land may assert a claim for regulatory taking. *Id*. at 935. A restriction denies the owner all economically viable use of the property or totally destroys the value of the property if it renders the property without value. *Id*. To determine whether all economically viable use of a property is

13

denied requires an analysis of whether any value remains in the property after the governmental action. *Id.* At the March 22 hearing, Basse conceded that it would still be able to use the property as a trucking yard after it surfaced the yard. Further, when asked if surfacing would totally destroy the value of its property, Basse acknowledged that it would not.

The TNRCC order determined that Basse permitted dust emissions in such quantities as to constitute a nuisance in violation of sections 382.085(a) and (b) of the health and safety code. In order to abate this nuisance, the order required Basse to surface its lots. This is neither a physical nor a regulatory taking of its property for public use. It is a remedial action taken by the TNRCC to cure the violation of a provision of the health and safety code, which the TNRCC has the authority to enforce. *See* Tex. Water Code Ann. § 7.073. What the TNRCC has done is to require compliance with state law prohibiting property to be used to create a nuisance. We overrule Basse's fourth issue.

In its fifth and final issue, Basse argues that the trial court erred in issuing the permanent injunction because there were no pleadings or evidence to support the injunction and the final judgment fails to comply with Texas Rule of Civil Procedure 683 by failing to state the reasons for issuing the injunction. *See* Tex. R. Civ. P. 683. However, Basse failed to raise this contention in the trial court; therefore, it has waived the issue. Tex. R. App. P. 33.1(h). In any event, rule 683 does not apply to permanent injunctions. *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.). The requirement of rule 683 that every order of injunction set forth the reasons supporting its issuance applies only to temporary injunctions where the relief ordered is ancillary to the ultimate relief sought. *Id.*

We are also unpersuaded by Basse's argument that the TNRCC's pleadings were inadequate in that they failed to allege harm and that the TNRCC had no adequate remedy at law. The pleadings specifically state that there is no adequate remedy at law. Additionally, the TNRCC alleges that Basse violated the terms of its final order, which found that Basse was violating state statutes and an administrative rule, both of which prohibit a public nuisance. A finding of a violation of the statute is essentially a finding of harm. *See State v. Cook United, Inc.*, 464 S.W.2d 105, 107 (Tex. 1971). We overrule Basse's fifth issue.

## CONCLUSION

Having overruled all of Basse's issues, we affirm the judgment of the district court affirming the order of the TNRCC, and all other relief granted.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Aboussie [*]

Affirmed

Filed: July 11, 2003

[*] Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).