# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00579-CV

**W. C. Carson and Albar Family Trust, Appellants**

**v.**

**The State of Texas; William Garbade; Robert Harwood; Darcie Schipull
and Mike McKissick, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN002763, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

## O P I N I O N

Appellants W.C. Carson ("Carson") and the Albar Family Trust ("Albar") appeal

from the trial court's judgment finding that they should take nothing by their inverse condemnation

suit against appellees the State of Texas, William Garbade, Robert Harwood, Darcie Schipull, and

Mike McKissick (collectively, "the State").[1] We affirm the judgment.

### Factual Background

The history surrounding these tracts of land goes back to the 1950s. Carson's and

Albar's properties were originally part of the Otwell tract, bordered on the north by Wonder World

---

[1] Garbade, Harwood, Schipul, and McKissick are State employees who in the course of their employment were involved in the decision to close the driveway and deny appellants a new driveway permit.

Drive, on the east by Interstate Highway 35 ("I-35") and its frontage road, and on the west by the bus depot, a tract owned by the San Marcos Independent School District. The bus depot only has access to Wonder World Drive. Before 1957, I-35 and Wonder World Drive were at grade elevation. In 1957, the State condemned the northernmost portion of the Otwell tract at the corner of Wonder World Drive and I-35, along with a small portion of the bus depot's northeast corner. The State then elevated Wonder World Drive over I-35 and built "jug handle" access ramps between Wonder World Drive and the highway; the southwest jug handle was situated on the condemned land. In 1981, the remaining Otwell tract was divided, Carson taking the northern portion and Albar the southern portion. Carson's tract is undeveloped; Albar's is developed with a commercial building.

In the early 1990s, the State redesigned the intersection, dropping Wonder World Drive back to grade and this time elevating I-35. The State removed the jug handle access ramps but left a portion of the ramp to give the bus depot access to Wonder World Drive. This driveway straddles the bus depot's property to the west and the State's right-of-way to the east. A gravel road runs from the paved driveway to the Carson tract and continues down along the west side of the Carson tract to the Albar tract.[2] There is a left turn lane on Wonder World Drive for turning into the driveway. Carson testified that since he bought his property in 1984, he had accessed it by turning into the paved driveway from Wonder World Drive and continuing down the gravel road.

In 2000, when Carson sought to sell his property, the buyer required an assurance of continued access to both the I-35 frontage road and Wonder World Drive. Carson submitted permit

---

[2] Albar's deed reserves an access easement along the west side of Carson's property. A utility easement runs along the west side of the State's, Carson's and Albar's tracts in the same area as the driveway and gravel road.

applications to the State for three driveways, one along Wonder World Drive and two along the frontage road. Carson applied for a forty-five foot wide driveway onto Wonder World Drive about twenty feet east of the bus depot's driveway. The requested drive would run 140 feet across the State's tract to Carson's property. During his inquiries, Carson learned that the State again plans to reconfigure the intersection of Wonder World Drive and I-35. All of the properties along the southwest side of Wonder World Drive will have new driveways built except for the Carson tract, which is closest to the intersection of Wonder World Drive and the frontage road. The State intends to remove the bus depot's current driveway and build a new one about 100 feet west along Wonder World Drive. The State informed Carson that it intended to deny application for a driveway off Wonder World Drive due to its plans to reconfigure the intersection; at trial a State's witness testified that Carson would be granted the permits for two driveways along the frontage road. Carson's potential buyer terminated the purchase negotiations.

When Albar learned that its access to Wonder World Drive, taken by way of the bus depot driveway and the gravel road along Carson's tract, would be denied, it joined Carson in suing the State. Appellants sought an injunction barring the State from closing the driveway and requiring the State to issue the permits and alleged that the State had committed inverse condemnation. At trial, appellants conceded that it would be unsafe to grant the permit for the requested driveway off Wonder World Drive. They then argued that the State must compensate them for the removal of the current driveway that provides them access via the gravel road because they will be deprived of access to Wonder World Drive. On appeal, appellants contend that (1) the State's decision to close the bus depot's driveway constituted a taking for which they should be compensated, and (2) the trial

court should have considered testimony indicating that appellants' properties were devalued by the State's decisions related to moving the bus depot's current driveway.

**Standard of Review**

A trial court's determination of whether there has been a taking through inverse condemnation is a question of law to be reviewed on appeal *de novo*. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). Similarly, we review *de novo* a determination of a material and substantial impairment of access. *See State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988).

A trial court's findings of fact have the same weight as a jury's verdict. *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied); *Des Champ v. Featherstone*, 886 S.W.2d 536, 541 (Tex. App.—Austin 1994, no writ). We review findings of fact for legal and factual sufficiency under the same standards used to review jury findings. *Des Champ*, 886 S.W.2d at 541. To determine the legal sufficiency of the evidence, we disregard all evidence contrary to the trial court's finding, and if there is any evidence supporting the trial court's judgment, we will uphold the judgment. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986). In reviewing a factual sufficiency point, we weigh all of the evidence in the record and may overturn a trial court's findings of fact only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Young Chevrolet*, 974 S.W.2d at 911-12. The trial court as trier of fact may draw reasonable inferences from the evidence, and its findings of fact will not be disregarded on appeal unless the record contains no probative evidence on which to base those inferences, or the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *IFG*

4

*Leasing Co. v. Ellis*, 748 S.W.2d 564, 656-66 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Central Power & Light Co. v. Bullock*, 696 S.W.2d 30, 33 (Tex. App.—Austin 1984, no writ). When a trial court's findings of fact are not challenged on appeal, they are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support them. *McGalliard*, 722 S.W.2d at 696; *Mort Keshin & Co. v. Houston Chronicle Publ'g Co.*, 992 S.W.2d 642, 645 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see Des Champ*, 886 S.W.2d at 541 ("When a court's findings of fact go unchallenged, such findings become undisputed facts binding on all parties.").

### Inverse Condemnation

In their first issue, appellants contend that the trial court erred in failing to find inverse condemnation in the State's decision to close the bus depot's driveway which afforded appellants access to Wonder World Drive. The only conclusion of law that appellants specifically challenge is the conclusion that Carson has no vested legal interest in the existing driveway. They implicitly challenge the conclusion that they will suffer no material and substantial impairment of access once the current driveway accessing Wonder World Drive is closed. Appellants do not specifically challenge the trial court's findings of fact. Appellants refer to the bus depot driveway as a joint access drive, which can be interpreted as an attack on the trial court's finding that the driveway "exists for the benefit of the San Marco ISD bus barn property."

At trial and on appeal, appellants refer to the existing driveway, which straddles the line between the bus depot and the State's property, as a joint use driveway. However, Michael McKissick, engineer for the Texas Department of Transportation ("the Department"), testified that

5

according to the Department's records, the driveway in question was built only for the bus barn. McKissick testified that generally when a driveway is condemned, the State builds a new driveway so the property maintains its same road access. McKissick also testified that if a driveway has to be removed but the property owner has other road access, the State "would deny him access to that particular roadway since he already has a driveway." Whether a property has access to another road is a principal consideration for the State when it considers whether a property has reasonable access.

The State argues that after it acquired the land on which the bus depot driveway lies, appellants' predecessors did not obtain official permission to access their property from Wonder World Drive via the jug handle. The 1957 judgment awarding the State the portion of the Otwell tract on which the jug handle was built does not note that the State has taken any access rights; neither does it reserve access rights to the remaining Otwell tract held by appellants' predecessors. The judgment simply grants the State fee simple title to the condemned property, which is now used as State right-of-way. By contrast, the judgment awarding the State a portion of the San Marcos ISD tract specifically reserves to the bus depot access onto Wonder World Drive.

Appellants state that "[a]bsent specific language in the deed or condemnation judgment divesting an owner of access rights, they are presumed to be retained by the landowners," but they cite no authority for that proposition. Appellants then urge, "The State must decide in each case whether access rights should be acquired to protect the safety of the traveling public," citing *State v. Meyer*, 403 S.W.2d 366 (Tex. 1966), as authority. In *Meyer*, the parties agreed that the State's petition, although seeking fee simple title, did not seek to condemn the landowner's access rights. *Id.* at 368-69. The issue was whether evidence of a retention of access rights should have

6

been admitted to mitigate the damages owed to the landowner. *Id.* at 369 ("In essence it is the State's contention that since respondents . . . still have remaining land from which they have access to the land taken, . . . there has not been a whole taking in fee simple but that instead the State has acquired a fee title burdened with an easement for which it should be entitled to pay less than for a fee simple absolute."). The supreme court noted that there is a clearly established right to ingress and egress "concomitant of ownership of land *abutting* on a highway." *Id.* at 370 (emphasis added); *see also City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex. 1974) (abutting owners have access rights to public streets and alleys); *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965) (same). An "abutting" property generally is land that *actually adjoins* the roadway, although it sometimes refers to land in close proximity. *State v. Fuller*, 407 S.W.2d 215, 220-21 (Tex. 1966).

Although appellants have historically enjoyed access to Wonder World Drive by way of the bus depot driveway, it does not follow that they have a vested legal right to do so. A party cannot gain a legal right to property against the State by adverse possession. *Weatherly v. Jackson*, 71 S.W.2d 259, 264-65 (Tex. 1940) ("Title cannot be acquired by adverse possession of land belonging to the state, and such possession is not evidence that the land possessed is not the property of the state. Similarly, long recognition by owners of adjacent surveys of certain lines as fixing the boundaries of the surveys cannot in any way affect public domain or appropriate any portion of it.").

When the Department condemned the portion of land lying between Wonder World Drive and Carson's tract, it took the land in fee simple and did not reserve any access rights to the remainder tract. At the same time, when taking the San Marcos ISD tract, the Department explicitly reserved an access easement across the condemned property to Wonder World Drive. The record

7

contains no information about the 1957 condemnation proceeding or judgment by which we could conclude as a matter of law that appellants' predecessors retained an access easement across the taken property. *See Meyer*, 403 S.W.2d at 370-74 (in condemnation proceeding, both sides agreed that access rights were not included in taking in fee simple; therefore "access appurtenant to their remaining land is still attached");[3] *City of Corpus Christi v. Polasek*, 404 S.W.2d 826, 831-32 (Tex. Civ. App.—Corpus Christi 1966, no writ) (city took land in fee simple to construct drainage ditch and in so doing, "condemned every right which appellee owned in the same, excluding certain mineral rights"; city could at any time deny appellee use of ditch and "[a]t most, a temporary permissive use is shown"; "This is not a case in which an owner's former right of access to a public facility, appurtenant to his remainder, is being retained in his favor.").

The State's witnesses testified that the Department's records indicated that the driveway was built to provide access to the bus depot and was not intended as a joint access drive. The fact that the existing driveway straddles the bus depot's tract and the condemned portion of the Otwell tract does not mandate a finding that the driveway was intended to provide access to appellants' property. Nor is a finding of joint access mandated because appellants were allowed to use the drive or because a utility easement runs along the driveway and gravel road. Although it may

---

[3] In a footnote, the *Meyer* court quoted from an article discussing highway condemnations, in which the author said that "the weight of authority seems to be that the owner of the remaining portions of the tract from which the condemned strip is taken has a right of access to the highway, unless, of course, the judgment of condemnation indicates in some way that that right is being taken." *State v. Meyer*, 403 S.W.2d 366, 372 n.1 (Tex. 1966) (quoting Dan Moody, Jr., *Condemnation of Land for Highway or Expressway*, 33 Tex. L. Rev. 357, 366-67 (1955)). However, the article concludes that the "only safe course is to insist on consideration of this point in the condemnation proceeding; if the condemning authority refuses to agree that a right of access is being retained, it must be assumed that it is being taken . . . ." *Id.*

be the better practice to include an explicit acquisition of access rights in a condemnation judgment or deed, the trial court could have infered that such was not the practice in 1957. Under that inference, the driveway is not on appellants' land and is not a joint-use drive, appellants do not abut Wonder World Drive, and they are not by law entitled to ingress and egress by that particular roadway, having full access by way of the highway frontage road. *See Fuller*, 407 S.W.2d at 220 (abutting owner "ordinarily refers to one whose land actually adjoins the way"); *Meyer*, 403 S.W.2d at 370 (right of access attaches to land abutting highway). The trial court properly concluded that appellants had no legal right to access Wonder World Drive through the bus depot's driveway.

Further, case law clearly holds that a property owner is not entitled to compensation unless his access is materially and substantially impaired. *Heal*, 917 S.W.2d at 10-11; *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex. 1969). A landowner's access is not materially and substantially impaired if he retains access to his property by way of a different street or a more circuitous route. *Wood Oil Distrib.*, 751 S.W.2d at 865 (no compensation when traffic merely required to travel more circuitous route to reach property); *Olivares*, 505 S.W.2d at 530 (property owner not entitled to compensation when road to east of property closed but access still possible by newly dedicated alley); *Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 112-14 (Tex. 1965) (no compensation for road closure where access still available by another street); *Collins v. City of San Antonio*, 443 S.W.2d 563, 568 (Tex. Civ. App.—San Antonio 1969, writ ref'd n.r.e.) (no compensation for more circuitous route due to closing of street on one side of property). In other words, a landowner is not entitled to compensation if he "has reasonable access to his property after construction of the public improvement. The benefits of private ownership have been assured so

long as there is reasonable access and an action for compensation under the Constitution will not lie where such is the case." *DuPuy*, 396 S.W.2d at 109.[4] Here, appellants retain full access to the I-35 frontage road. Access to their properties may be slightly more circuitous, requiring a turn onto the frontage road, but their properties are not materially or substantially impaired.

## Conclusion

Appellants are not entitled to inverse condemnation compensation for the driveway's closure. We overrule appellants' first issue on appeal. Having held appellants are not entitled to compensation for inverse condemnation, it is unnecessary for us to consider appellants' second issue related to valuation testimony. Accordingly, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: July 24, 2003

---

[4] We recognize that the case law cited above discusses when a roadway is closed, not when a driveway is closed. However, we believe the rule regarding material and substantial impairment applies equally to this situation.